The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Sherman SCHUETT, Defendant–Appellant.

No. 89CA992.

Colorado Court of Appeals, Div. I.

May 23, 1991.

Rehearing Denied July 5, 1991.

Certiorari Granted Nov. 12, 1991.

Cross–Petition for Certiorari Denied (Schuett) Nov. 12, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lowery, Lamb and Lowery, P.C., Philip E. Lowery, Timothy J. Lamb, Teresa W. Seymour, Denver, for defendant-appellant.

Opinion by Judge PIERCE.

Defendant, Sherman Schuett, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of second degree kidnapping, second degree forgery, and theft. He also appeals the sentence imposed thereon. We affirm in part and reverse in part.

There was evidence present that, in July 1987, defendant removed the alleged victim, an elderly and allegedly senile woman for whom he was caring, from Jefferson County, Colorado, to Guadalajara, Mexico, where he had her admitted to a rest home.

That transaction formed the basis of the kidnapping charge.

There was also evidence presented to prove that, in November 1987, while the victim was still in Mexico, defendant simulated her signature on one check and cashed two others for which he received cash. The forgery and theft charges were based on those transactions. Defendant was sentenced to five years on each count, to be served concurrently.

Defendant asserts that the evidence was insufficient to sustain his conviction on any of the counts.

## I.

Defendant first contends that the People have not established a *prima facie* case of second degree kidnapping as defined in § 18-3-302, C.R.S. (1990 Cum.Supp.). That statute requires that the prosecution prove the following elements:

1) That the defendant,

2) knowingly,

3) seized and carried any person from one place to another,

4) without that person's consent, and

5) without lawful justification.

It is argued that, by virtue of *People v. Fuller*, 791 P.2d 702 (Colo.1990); *Apodaca v. People*, 712 P.2d 467 (Colo.1985), there is an additional, judicially created, qualification that when a person is carried from one place to another, whether it be a short or long distance, the physical risk to the victim must be substantially increased.

We do not agree with the argument that there must necessarily be an increase in the risk of physical harm to the victim to fulfill this requirement. Under the facts of this case, it is sufficient that the People presented evidence that defendant attempted to, and did do, harm to the victim because the act of moving her was accomplished so that defendant might more easily appropriate her assets. This increase in the risk to the victim's interests was a harm to her sufficient to support the kidnapping charge.

■ Defendant next maintains that the prosecution failed to establish that the trip to Mexico was taken without the victim's consent.

At trial, the prosecution proceeded under the theory that the victim was unable to give her consent because she suffered from the mental disease of senility. Section 18–1–505(3)(b), C.R.S. (1986 Repl.Vol. 8B) provides, in relevant part, that:

"[a]ssent does not constitute consent if it is given by a person who, by reason of ... mental disease or mental defect ... is manifestly unable and is known or reasonably should be known by the defendant to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense."

The prosecution produced testimony from three expert witnesses who established that the victim suffered from senility to the extent that she did not know where she was, what day it was, and that she was unable to make a reasonable judgment as to whether the Mexico trip might be harmful to her or her interests. Moreover, the testimony established that the victim's disease would be obvious to anyone who spent time with her.

Another prosecution witness testified that, four months prior to her departure, the victim objected to going to Mexico. This witness also testified that defendant took the victim to Mexico so that he could retain control over her money.

Even though defendant testified that he acted only in the victim's best interests, it is the fact finder's function to determine what weight should be given to all parts of the evidence, including resolving conflicts, inconsistencies, and disputes in the evidence. *Kogan v. People,* 756 P.2d 945 (Colo.1988). Viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence to submit the issue of consent to the jury.

■ The final element mentioned in the statute is that the seizing and carrying away of a person must be "without lawful justification." This element also must be proved beyond a reasonable doubt. *People v. Rex,* 636 P.2d 1282 (Colo.App.1981).

We would further note that this element is of special importance in this statute because without it, a result would be reached that would surely not be within the intent of the General Assembly. For example, if a person were to, even at their own considerable expense, remove a senile parent from the parent's home and place the parent in a retirement home, this statute would be technically violated.

The element presents a perplexing problem because of the facts of this case and an incident that occurred during the jury deliberations. The jury was instructed that each element of the crime had to be proved beyond a reasonable doubt and all of the elements were listed.

During their deliberations, however, the jury posed the following question regarding this instruction to the trial court:

"Please define the term 'lawful justification' in part 6.

Are the terms 'legal authority' and 'lawful justification' synonymous? If not, please explain the difference."

The trial court answered as follows:

"The term 'without lawful justification' is not defined in the Colorado statutes. Therefore you must give this term the common meaning that the words imply. Since the term 'legal authority' is not included in Instruction 13, the court cannot define it for you."

In addition, the trial court further instructed the jury:

"I know that you have asked one question concerning terms, so I want to remind you specifically that you must not refer to dictionaries, encyclopedias, world books, city directories, nothing, a textbook, no reference book of any kind. You must rely on the directions that the court has given you and your own memories of the evidence that was presented to you."

■ Since defendant failed to object to the instruction given and the trial court's subsequent response, reversible error exists only if the omission of the definition of

this element rises to the level of plain error. *See People v. Fuller,* 791 P.2d 702 (Colo.1990). We realize that the statute and case law provided the trial court with no guidance. We conclude, however, that the failure to offer definitions, after the jury had shown its confusion, was plain error since members of a jury must be adequately instructed in order to enable them to assess whether every element has been proven beyond a reasonable doubt. *See Chambers v. People,* 682 P.2d 1173 (Colo.1984).

Here, the jury could well have come up with a definition which, in fact, placed the burden on the defendant to prove that he did have legal justification.

In addition, this element constitutes a term of art, which is not within laymen's knowledge. Furthermore, whether the asportation of the victim was done with "lawful justification" was a contested issue at trial and, therefore, affected the defense raised and the jury's deliberation. *See People v. Esquibel,* 794 P.2d 1065 (Colo. App.1990).

Finally, after the jury indicated its confusion as to the application of a legal standard as an element of the charged offense, the trial court erred in referring the jury back to the original instruction and directing that the "common meaning" of this legal term be employed. *See People v. Alexis,* 806 P.2d 929 (Colo.1991); *Leonardo v. People,* 728 P.2d 1252 (Colo.1986).

We appreciate the dilemma the trial court was faced with when the statute did not contain a definition of this term, but this term does not have a common meaning. In our search for a proper definition to be given upon retrial of this charge, we have obtained no assistance from the statute itself, its legal history, the briefs in this case, or the oral argument. Likewise, our research of case and statutory law of this state and other states has provided little insight.

■ In looking at the probable intent of the General Assembly in using this language and in further considering the evil which this statute is designed to punish, we conclude that such statutory language ex-

ists to protect those who have legal authority, based on their relationship to the victim, to seize and carry a person from one place to another. *See Lewis v. State,* 252 Ind. 454, 250 N.E.2d 358 (Ind.1969). Therefore, we define the term "without lawful justification" to mean that the actions of the defendant were committed "in the pursuit or furtherance of an illegal purpose."

Examples of an illegal purpose would be an asportation with intent to commit a sexual assault, *Yescas v. People,* 197 Colo. 379, 593 P.2d 358 (1979), the violation of a court order, *see Armendariz v. People,* 711 P.2d 1268 (Colo.1986), or, in this case, if the jury believes the prosecution's theory that placing the victim in the nursing home in Mexico was done in pursuance of the commission of a felony, for the purpose of gaining greater or easier access to deprive her of her money.

Therefore, we rule that the jury should have been given a definition of the term it requested and that the error entitles defendant to a new trial on the second degree kidnapping charge.

## II.

■ Defendant further argues that the evidence was insufficient to support his conviction of forgery or theft. He maintains that the prosecution failed to prove beyond a reasonable doubt that he acted without authorization or with the intent permanently to deprive the owner of her property. We reject this contention.

Here, the evidence in the record showed that defendant signed the victim's name to a check from her personal checking account and then deposited it into a partnership checking account on which he had signature authority. Following two subsequent transactions on the partnership account, defendant received a total of $1,150 cash. These transactions took place after a temporary conservator had been appointed to handle the victim's assets. Again, during this period, the victim was suffering from senility to the extent that she was unable to give consent under § 18–1–505(3)(b), C.R.S. (1986 Repl.Vol. 8B).

■ Because direct evidence of a defendant's state of mind is rarely available, his intent to commit theft may be inferred from his conduct and the circumstances surrounding the case. *People v. District Court,* 779 P.2d 385 (Colo.1989).

Defendant refers mostly to his own testimony to support his contention that the victim granted him authority to sign her name to checks and that he used all of the money to provide for the victim. However, conflicting testimony from an attorney the defendant consulted indicated that the defendant knew he was no longer authorized to deal with the victim's assets at the time of these transactions. This testimony was admitted without objection.

We conclude that sufficient evidence was produced at trial to support the jury's conclusion that defendant was guilty, beyond a reasonable doubt, of forgery and theft. Giving the prosecution the benefit of every reasonable inference and deferring to the jury's determination of credibility, we find no merit in defendant's assertions with regard to the sufficiency of evidence as to these two charges. *See Kogan v. People, supra.*

### III.

Defendant also contends that the trial court abused its discretion in denying his motion for a continuance. Again, we find no error.

■ The grant or denial of a motion for continuance rests within the sound discretion of the trial court and will not be overturned on review absent an abuse of that discretion and a showing of actual prejudice by the defendant. *People v. Denton,* 757 P.2d 637 (Colo.App.1988).

■ Here, defendant's motion for continuance alleged that the attorney who had been working on the case left the law firm that defendant had retained, and the new attorney would have insufficient time to review the voluminous documents and interview the numerous witnesses necessary to prepare adequately for trial. The trial court denied the motion, finding that counsel had failed to establish good cause for a continuance, and also denied a motion to reconsider the denial of the continuance.

Having reviewed the record in this regard and having considered the totality of the circumstances, we conclude. that the trial court did not abuse its discretion. The law firm representing defendant had three and one-half months to prepare for trial after the attorney originally assigned to the case departed. We note that the law firm was involved with the case from the time of arraignment, a period of five and one-months. Also, at the time of the denial of the motion for continuance, approximately one month remained until the trial date.

Despite the alleged complexity of the case, it appears counsel had ample opportunity to prepare for trial and no special showing of prejudice to defendant has been established. *People v. Denton, supra.* Under these circumstances, we find no abuse of discretion.

### IV.

Defendant next contends that the trial court committed reversible error by allowing the prosecution to impeach him with collateral source evidence, namely a bank card and loan applications prepared by defendant which contained false statements. We disagree.

The trial court overruled defendant's objection to the admission of this evidence, finding that defendant testified without objection to the contents of the documents, and concluded that the evidence was relevant to the issue of the exercise of control over the victim's assets.

■ We conclude that the evidence was properly admissible under § 16–10–201, C.R.S. (1986 Repl.Vol. 8A). Here, defendant was given an opportunity to explain the statement, was available to give further testimony, and the previous statement related to a matter within his own knowledge. *See Montoya v. People,* 740 P.2d 992 (Colo.1987).

■ Moreover, we find no merit in defendant's contention that his admission of

the prior inconsistent statements precluded admission of the evidence. The statute controls over CRE 613 under these circumstances. *Montoya v. People, supra.*

## V.

 Defendant claims that the presentence report contains improper matters, causing him prejudice during the sentencing proceedings.

The record reflects that defendant was given an opportunity to refute the contents of the presentence report prior to sentencing. The trial court took note of the offered corrections. Thus, the trial court complied with § 16–11–102(5), C.R.S. (1986 Repl.Vol. 8A), and defendant was afforded ample opportunity to take issue with the contents of the report.

Having failed to state all of his objections at that time, defendant is precluded from raising further objections on appeal. *See Wolford v. People,* 178 Colo. 203, 496 P.2d 1011 (1972). Therefore, we find no merit in this contention.

## VI.

Finally, defendant asserts that the sentence of three concurrent terms of five years is excessive. We address this contention as to the convictions for forgery and theft which we affirm, and as to those convictions find no abuse of discretion.

 Sentencing, by its very nature, is a discretionary decision which requires the weighing of various factors and the striking of a fair accommodation between the defendant's need for rehabilitation or corrective treatment and society's interest in safety and deterrence. *People v. Watkins,* 200 Colo. 163, 613 P.2d 633 (1980).

 Here, defendant was convicted of two Class 4 felonies which carry a presumptive sentence range of from two to eight years. In sentencing defendant, the trial court considered his prior criminal history and the nature of the offense, including the vulnerable condition of the victim and defendant's promotion of his personal benefit at the expense of the victim's trust.

Under the circumstances of this case, we find no abuse of discretion in the imposition of concurrent sentences in the presumptive range on these two charges.

We have examined the other allegations of error set forth by defendant and rule them to be without merit.

The convictions and sentences on the charges of forgery and theft are affirmed. The conviction for second degree kidnapping is reversed, and the cause is remanded for a new trial on that charge with proper instructions.

CRISWELL and DUBOFSKY, JJ., concur.