No. 25146.

THE PEOPLE OF THE STATE OF COLORADO v.
CHARLES MARVIN POTTER.
(491 P.2d 974)

Decided December 20, 1971

CARL PARLAPIANO, District Attorney, DONALD W. HULL, Deputy, for plaintiff-appellee.

ROLLIE R. ROGERS, State Public Defender, J. D. MAC-FARLANE, Chief Deputy, BRIAN T. KNIGHT, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

DEFENDANT Charles Potter is charged with the theft of certain items of welding equipment from the Department of Transportation's test track near Pueblo on November 8, 1970. The trial court, after a hearing, denied defendant's motion to suppress a certain statement made by him to the sheriff. The defendant thereupon brought this interlocutory appeal challenging the trial court's ruling. We affirm.

In response to a request, defendant went to the sheriff's office and talked to Deputy Hall on the morning of November 20th. Defendant's testimony at the suppression hearing is that Hall told the defendant that he knew defendant had taken the equipment from the test site and "he asked me if I knew where it was and told me if I did, if I told him where it was and they got it back, nothing would happen to me." Hall's testimony upon this point is to the effect that he had an informal con-

versation with the defendant, telling him that there had been a theft at the track, and asking him if he knew anything about it. Hall testified that the defendant told him that he did not have anything to do with the theft, but that he would check around and see if he could find out anything. Hall also testified that he told the defendant that if the equipment came back, and if the defendant had nothing to do with the theft, nothing would happen to him. It was later deve'oped in the testimony that Hall, at the very least, told the defendant that it would go easier on him if he cooperated with the sheriff's department. At no point in this initial confrontation was the defendant advised of his rights.

The defendant left the sheriff's office, only to return around 1:00 p.m. that same day. At this time, he told Hall where the stolen items could be found. The defendant in his testimony stated that he again asked Hall about his earlier promise, and Hall replied that nothing would happen to the defendant if the equipment were returned. The defendant then again left the sheriff's office.

Following the information given by the defendant, the sheriff's office recovered the stolen items. On November 25th, Hall and another deputy, picked the defendant up at his home and took him to the office for questioning. The defendant was advised of his constitutional rights and he signed an advisement form. At this time, the defendant was questioned by Sheriff Torres. Hall took only a minimal part in the interrogation. In response to the sheriff's first question, the defendant admitted stealing the welding equipment. After this admission, the defendant, according to his testimony, asked the sheriff about Hall's promises and the sheriff, in effect, reneged on them. Later, when cross-examined about promises to the defendant, Hall admitted saying on the November 20th occasion that it would go easier on him if he cooperated. He denied ever promising that nothing would happen to the defendant.

The defendant moved to suppress all of the statements he had made on the 20th of November, as well as the tangible evidence recovered as a result of those statements, and the confession of the 25th. The court granted the defendant's motion with respect to the statement made on the 20th and the tangible evidence, finding that Hall had offered sufficient inducement to the defendant to vitiate the voluntariness of his statements. The judge ruled that the confession of the 25th was given after adequate warning of constitutional rights and that the statement was not the product of the inadmissible statements given on the 20th. The judge also found that there had been no exploitation of the illegally obtained statements and that there was sufficient independent evidence linking the defendant to the theft. The court denied suppression of the November 25th confession.

The defendant's first major contention on this appeal is that there was a causal connection between the statements made on the 20th and the confession of the 25th. This link is said to exist by virtue of the fact that the defendant had not been removed in time or place from his original surroundings and psychological effect of the original circumstances.

Because the People have not appealed that portion of the trial court's ruling granting suppression of the statements made on November 20th and the tangible evidence recovered as a result thereof, this court would normally not be concerned with that portion of the court's order. However, in a case of this nature, we are bound to consider the totality of the circumstances and determine the issues raised with reference to the entire record before us. *Westover v. United States,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Clewis v. Texas,* 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423

For the purposes of this appeal, we will assume that the court was correct in granting that portion of the defendant's motion that it did. It does not necessarily follow, however, that a subsequent confession, obtained

after proper constitutional warnings are given, is defective just because prior statements might be tainted with illegality. It is only in those cases where the subsequent confession was obtained in circumstances not "significantly distinguishing to purge it of the original taint" that the subsequent statement must also fall. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654; *Gilpin v. United States*, 415 F.2d 638; *Commonwealth v. Bordner*, 432 Pa. 405, 247 A.2d 612.

■ The defendant's second contention is that even if the defendant were divorced from the original surroundings, his earlier statements had inculpated him, and the police should not be allowed to profit by their earlier illegal actions. In *United States v. Bayer, supra,* the court said:

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. * * * In such a sense, a later confession always may be looked upon as the fruit of the first. But this court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a useable one after the conditions have been removed."

It will be noted that the defendant herein did not make an admission of guilt on November 20th. He explicitly disavowed stealing the equipment. In the *Bayer* case, the defendant had confessed on both occasions. The court therein held that the second confession was not the product of the first.

■ The test to be applied in cases of this type was set forth in *Wong Sun v. United States, supra,*

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather,

the more apt question in such a case is 'whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

Applying that test in the instant case, the trial court held that there was evidence of independent sources of information which removed the primary taint of the statements made on the 20th. We agree with that conclusion. The unrebutted testimony of the sheriff and his deputy is that the sheriff's office had found a great deal of information which linked the defendant to the theft. The fact that the defendant was not warned of his constitutional rights on the 20th did not preclude the sheriff's office from continuing the investigation. If they found independent evidence of the crime, they were not precluded from using it against the defendant. The undisputed testimony in the record is that the defendant admitted the theft in response to the first question asked by the sheriff. This is inconsistent with the idea that the sheriff exploited the illegally obtained evidence or used it as a sledgehammer over the head of the defendant to elicit his statement of November 25th.

The trial court did not erroneously refuse to suppress defendant's statement of November 25th.

Ruling affirmed.