The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

James Herbert McINTYRE,
Defendant–Appellee.

No. 89SA203.

Supreme Court of Colorado,
En Banc.

April 23, 1990.

---

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy Dist. Atty., and Michael J. Milne, Sr. Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, Colorado Public Defender, and William Sublette, Deputy State Public Defender, Brighton, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This is an interlocutory appeal by the prosecution pursuant to section 16–12–102(2), 8A C.R.S. (1989 Supp.) and C.A.R. 4.1. The trial court found that certain statements including a written confession given by the defendant James H. McIntyre to the police were involuntary and ordered their suppression. We affirm the ruling of the trial court.

I

After receiving reports that the defendant had sexually abused his three-year-old son, Detective Wayne Weyler of the Adams

County Sheriff's Department attempted to contact McIntyre. When McIntyre was told by his mother that Weyler wanted to talk to him, McIntyre telephoned Weyler and, at the detective's suggestion, agreed to come to the station house. McIntyre met Weyler at the police station at 1:00 p.m. on September 8, 1988, and an interview was conducted which lasted about an hour and a half. At the conclusion of the interview, McIntyre gave a written statement to Weyler admitting that he had sexually abused his son.

As a result of the investigation, McIntyre was charged with sexual assault on a child by one in a position of trust, a class 3 felony. § 18–3–405(2)(b), 8B C.R.S. (1986). McIntyre filed a motion to suppress his statements, alleging inter alia that the statements were involuntary and obtained without a *Miranda*[1] advisement. A hearing was held by the trial court on May 19, 1989.

At the hearing, Weyler testified that he told McIntyre that he was suspected of sexually abusing his son, but that he was not under arrest and not in custody. He did not give McIntyre the warnings required by *Miranda*. Weyler stated that McIntyre initially adamantly denied the allegations, but as the interview continued, McIntyre "began to cry and was very upset and at times he almost became despondent and withdrew from talking to me." Toward the end of the interview, however, McIntyre told Weyler that "things had happened."

Weyler asked McIntyre if he would make a written statement, and McIntyre assented. After McIntyre sat motionless with his head bowed for ten minutes, writing nothing, Weyler left the room. When he returned, McIntyre had written a terse statement admitting to the sexual abuse of his son. McIntyre was then allowed to leave the station house. He was not placed under arrest, but was issued a felony summons to appear to answer charges.

McIntyre testified at the suppression hearing that the first thing Weyler brought up was the death of McIntyre's brother,

apparently a very traumatic subject for McIntyre. At the time of the interview, McIntyre was seeing a therapist for psychological problems. When McIntyre denied abusing his son, Weyler threatened him with immediate arrest, $50,000 bail, and a long term in prison. Weyler denied telling McIntyre that he would be arrested if he refused to confess, although he admitted knowing that McIntyre was in therapy. At the conclusion of the hearing, the trial judge ruled that McIntyre's statements to Weyler would be suppressed because of the absence of *Miranda* warnings and because they were involuntary.

## II

As a threshold matter, we must determine whether the trial court's findings of fact and conclusions of law are adequate for purposes of appellate review. Two rules of Criminal Procedure are directly applicable to a motion to suppress a confession made before trial: Crim.P. 12(b)(4) and 41(g). Crim.P. 12(b)(4) provides:

> **Hearing on Motion.** A motion before trial raising defenses or objections shall be determined before the trial unless the court orders that it be deferred for determination at the trial of the general issue except as provided in Rule 41. An issue of fact shall be tried by a jury if a jury trial is required by the Constitution or by statute. *All other issues of fact shall be determined by the court with or without a jury or on affidavits or in such other manner as the court may direct.*

(Emphasis added.) Crim.P. 41(g) states:

> **Suppression of Confession or Admission.** A defendant aggrieved by an alleged involuntary confession or admission made by him, may make a motion under this Rule to suppress said confession or admission. The motion shall be made and heard before trial unless opportunity therefor did not exist or defendant was not aware of the grounds for the motion, but the court, in its discretion, may entertain the motion at the trial. The judge shall receive evidence

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

on any issue of fact necessary to the decision of the motion.

■ Implicit in these rules is the requirement that the trial court, in determining the voluntariness of a confession, resolve contested issues of fact and place its findings on the record. Otherwise, appellate review may be impossible, requiring remand for further findings. *See Espinoza v. People,* 178 Colo. 391, 396, 497 P.2d 994, 996 (1972) (remanding for trial court to make specific findings of fact on voluntariness of defendant's confession); *Martinez v. People,* 174 Colo. 125, 130–31, 482 P.2d 375, 378 (1971) (same). We hold, therefore, that before a trial court may rule that a confession is voluntary and admissible, or that it is involuntary and must be suppressed, the court must make sufficiently clear and detailed findings of fact and conclusions of law *on the record* to permit meaningful appellate review.

■ On initial submission of this appeal, we remanded the cause to the trial court "for the entry of more specific factual findings as to the issues of custody and voluntariness." *People v. McIntyre,* No. 89SA203 (Colo. Nov. 3, 1989). The trial court's supplemental findings of fact and conclusions of law are still insufficient to resolve whether McIntyre was in custody at the time he confessed. It is not clear from the findings whether the trial court determined that McIntyre was in custody or not at the time of the confession. If the court did find that McIntyre was in custody, we are not certain that the court applied the correct objective legal standard in evaluating the issue of custody.[2]

In addition, the testimony of McIntyre and Detective Weyler at the suppression hearing regarding what occurred during the interview leading up to McIntyre's confession differed materially. Nevertheless, we conclude that the trial court's implied findings of fact are just marginally sufficient to permit meaningful appellate review, and that remand for further findings is unnecessary.

## III

■ The admission of a defendant's involuntary confession offends the Due Process Clause of the fourteenth amendment, whether or not the defendant was in custody when the confession was made. The legal standard used to determine the voluntariness of an extrajudicial confession is well-established:

[A criminal defendant's extrajudicial] statement can only be admitted if it was voluntary. *Jackson v. Denno,* 378 U.S. 368, 376–77 [84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908] (1964). The prosecution has the burden of establishing the voluntariness of the statement by a preponderance of the evidence. *People v. Fordyce,* 200 Colo. 153, 156, 612 P.2d 1131, 1133 (1980). A statement is voluntary if not "extracted by any sort of threats or violence, *nor obtained by any direct or implied promises, however slight....*" *People v. Pineda,* 182 Colo. 385, 387, 513 P.2d 452, 453 (1973) (quoting *Brady v. United States,* 397 U.S. 742, 753 [90 S.Ct. 1463, 1471, 25 L.Ed.2d 747] (1970)). It must be the product of an essentially free and unconstrained choice by the maker. *People v. Raffaelli,* 647 P.2d

---

**2.** "The question of custody turns on an objective assessment of whether a reasonable person in the defendant's circumstances would have believed that he was free to leave the officer's presence." *People v. Thiret,* 685 P.2d 193, 203 (Colo.1984).

The fact that the interrogation occurred at the police station is not dispositive of the issue of custody. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), held that a parolee was not in custody for *Miranda* purposes where he voluntarily went to the station house pursuant to a request of the police knowing that the police suspected him of committing a burglary.

In *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam), the Court held that the police did not have to administer *Miranda* warnings to a suspect who voluntarily accompanied the police to the station house, was told he was not under arrest, and was later released after an interview of less than 30 minutes, even though the interview may have had coercive aspects.

Because of our disposition of this appeal, we do not resolve the issue of custody and we express no opinion thereon.

230, 234 (Colo.1982). Voluntariness of a statement is determined on the basis of the totality of the circumstances under which it is given. *Id.* at 235. Relevant circumstances include events and occurrences surrounding the statement and the mental condition of the maker. *Id.* *People v. Mounts,* 784 P.2d 792, 796 (Colo. 1990).

Our appellate standard of review is also well-settled:

> In reaching a decision on a motion to suppress a custodial statement, a court must engage both in factfinding—a specific inquiry into the historical phenomena of the case—and law application, which involves the application of the controlling legal standard to the facts established by the evidence.... A court's findings of historical fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record.... An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings, however, is subject to correction by a reviewing court, as is a court's application of an erroneous legal standard to the facts of the case.

*People v. Quezada,* 731 P.2d 730, 732–33 (Colo.1987) (citations omitted). In his supplemental findings of fact and conclusions of law, the trial judge stated: "In this case, assessing credibility of witnesses and considering the atmosphere surrounding the interrogation, the use of threats, the conduct of the defendant and his mental condition at the time the statement was made, it was not a voluntary admission." We believe that the trial court applied the proper legal standard on voluntariness to the facts of this case.

There is competent evidence in the record to support the conclusion that Weyler, aware of McIntyre's fragile mental and emotional condition, exploited McIntyre's weaknesses to obtain the confession. In addition, the trial court was entitled to find, contrary to Weyler's testimony, that Weyler threatened McIntyre with immediate arrest, a high bond, and prison if he did not confess.

■■ The burden of persuasion is upon the prosecution to prove that a statement of the defendant was made voluntarily. *Mounts,* 784 P.2d at 796. A confession that is extracted by police threats is not voluntary. *People v. Pineda,* 182 Colo. at 387, 513 P.2d at 453. The trial court could properly conclude that the prosecution had not proved that McIntyre's confession was made voluntarily.

We find that the trial court's "ultimate conclusion of constitutional law" that McIntyre's confession was involuntary is neither "inconsistent with [n]or unsupported by evidentiary findings" and accordingly we affirm the suppression ruling.

ROVIRA, J., dissents, and VOLLACK and MULLARKEY, JJ., join in the dissent.

Justice ROVIRA dissenting:

The majority concedes that the trial court's findings of fact and conclusions of law are insufficient to determine whether the defendant was in custody at the time of his statement. Nevertheless, it holds that the trial court's "implied findings" of fact are marginally sufficient to permit appellate review regarding the voluntariness of the defendant's statement. Because I believe that the trial court's findings are inadequate to permit meaningful appellate review of the voluntariness issue, I respectfully dissent.

I agree with the majority's conclusion that the trial court's findings, regarding whether the defendant was in custody at the time of his statement, are inadequate. The test for determining whether a person is in custody is an objective one, which considers whether a reasonable person in the suspect's position would believe that he was deprived of his freedom of action in any significant way. *See, e.g., People v. Viduya,* 703 P.2d 1281 (Colo.1985). In making this determination, the trial court must consider the totality of the circumstances under which the questioning occurred. This determination is a question of fact, which will not be reversed upon appeal, when the findings are supported by

competent evidence and the correct legal standard is applied. Here, the trial court's findings of fact are inadequate to evaluate whether the defendant was in custody at the time of the statement. The trial court's findings, regarding the voluntariness of the defendant's statement, are similarly deficient.

To be admissible against the accused at trial, the statement must have been voluntarily made. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A statement is voluntary if it is the product of rational intellect and a free will, unaffected by improper influence, coercion, threats or promises. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *People v. Rhodes*, 729 P.2d 982 (Colo.1986). In resolving the voluntariness issue, the trial court must consider the totality of the circumstances under which the statement was given, including:

> [T]he atmosphere and events surrounding the elicitation of the statement, such as the use of violence, threats, promises, improper influence or official misconduct, the conduct of the defendant before and during the interrogation and the defendant's mental condition at the time the statement is made.

*People v. Pearson*, 725 P.2d 782, 783 (Colo. 1986) (citations omitted).

In reaching its conclusion, the court must "engage both in factfinding—a specific inquiry into the historical phenomena of the case—and law application, which involves the application of the controlling legal standard to the facts established by the evidence." *People v. Quezada*, 731 P.2d 730, 732 (Colo.1987). The trial court's findings of historical fact are entitled to deference and will not be overturned on appeal if supported by competent evidence.

The trial court, however, must make sufficiently clear and detailed findings of fact and conclusions of law on the record to permit meaningful appellate review. I disagree with the majority's contention that "the trial court's implied findings of facts are just marginally sufficient to permit meaningful appellate review." At 1110.

Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the due process clause of the fourteenth amendment. In *Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986), the Court stated that:

> [T]he cases considered by this Court over the 50 years since *Brown v. Mississippi* [297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936)] have focused upon the crucial element of police overreaching. While each confession case has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. Respondent correctly notes that as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the "voluntariness" calculus. But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional "voluntariness".

Here, there is conflicting testimony regarding what took place at the interview. Weyler testified that he did not threaten the defendant in any way, informed the defendant that he was free to leave at anytime, and told the defendant that he was not under arrest. This testimony is inconsistent with the defendant's account of the interview. The trial court's findings of fact, however, do not directly address this critical issue of credibility. Without such a finding, meaningful review of whether the defendant's statements are the product of coercive police conduct cannot be made. Absent a finding of official misconduct, I see no reason to indulge in a presumption of involuntariness based upon "implied findings."

Further, the trial court's findings of fact do not address the defendant's "fragile"

mental condition.[1] The majority independently reviews the record and concludes that: "Weyler, aware of [the defendant's] fragile mental and emotional condition, exploited [the defendant's] weaknesses to obtain the confession." At 1112. The resort to such an inquiry further illustrates the inadequacy of the trial court's findings of fact.

Accordingly, I respectfully dissent.

I am authorized to say that Justice VOLLACK and Justice MULLARKEY join in this dissent.

---

1. The only reference to the defendant's mental condition occurs in the trial court's conclusions of law, in which it states that in "assessing credibility of witnesses and considering the atmosphere surrounding the interrogation, the use of threats, the conduct of the defendant and his *mental condition* at the time the statement was made, it was not a voluntary admission." (Emphasis added.)