**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Ricky BOWMAN, Defendant–Appellant.**

**No. 89CA1831.**

Colorado Court of Appeals, Div. IV.

May 9, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric V. Field, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, T. Curtis Bobbitt, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Ricky Bowman, appeals the judgment of conviction entered following a trial to the court which found defendant guilty of sexual assault on a child. We affirm.

During an intake interview by a social worker employed by an alcohol treatment facility, defendant admitted engaging in sexual conduct with his minor step-daughter. The social worker reported the alleged sexual abuse to the appropriate county child welfare authority who, in turn, informed the police.

Several days later, defendant was interviewed at the alcohol treatment facility by a police detective. Defendant was told that he was not under arrest, would not be arrested after the interview, and was free to leave at any time. He was not advised of his *Miranda* rights. Defendant admitted to the detective that he had engaged in sexual conduct with his step-daughter. He did refuse to answer one question, unrelated to the alleged sexual assault.

Defendant was later arrested on the charge of sexual assault on a child and interviewed by another detective, who advised him of his *Miranda* rights. Defendant stated that he understood these rights, but when asked if he wished to waive them, he stated, "I'll try," and, "[I]t's hard to waive these rights, you know." The detective then told defendant that he did not have to waive the rights and asked if defendant understood that if he did so, he could stop answering questions at any time. Defendant then stated he understood this, agreed to sign a waiver, and then admitted to sexual conduct with his step-daughter.

Prior to trial, defendant sought to exclude his statements to the social worker, and evidence derived therefrom, on the grounds that the statements were privileged pursuant to § 13–90–107(1)(g), C.R.S. (1987 Repl.Vol. 6A). The court held that although defendant's statements to the social worker were privileged, that privilege was superseded by the § 19–10–104, C.R.S. (1987 Repl.Vol. 6A), which requires that suspected child abuse be reported.

Defendant also sought to exclude his statements to the detectives, alleging as to the first that he was inadequately advised of his right to remain silent and, as to the second, that he did not knowingly and voluntarily waive that right. The trial court determined that defendant's rights were not violated at the time of either statement. Both statements were admitted at trial.

I.

On appeal, defendant first contends that the trial court should have excluded his statements to the social worker, and all evidence derived therefrom, on the grounds that the statements were privileged under § 13–90–107(1)(g).

A.

■ Section 13–90–107(1)(g) provides, in pertinent part, that a licensed psychologist, or any person who participates in therapy under a psychologist's supervision, cannot testify about communications with a client

that occurred during the therapy unless the client consents. Here, the trial court found, and the parties concede, that this testimonial privilege applied to defendant's communications to the social worker. However, it also determined that this privilege was abrogated by § 19–10–112, C.R.S. (1986 Repl.Vol. 8B), in effect at the time of defendant's trial. We do not agree.

The pertinent version of § 19–10–112 specified that the privileged communications between a physician and patient, between a nurse and patient, and between husband and wife could not be grounds for excluding evidence in any judicial proceeding regarding child abuse or neglect. Thus, by its plain language, this statute did not abrogate the psychologist-patient privilege relevant here. *See Human Services, Inc. v. Woodard,* 765 P.2d 1052 (Colo.App. 1989) (privileged communications between social worker and client is not abrogated by Child Protection Act); *People v. District Court,* 719 P.2d 722 (Colo.1986) (psychologist-patient privilege is applicable in criminal and civil cases).

■ The People point out, however, that, under the statute now codified as § 19–3–304, C.R.S. (1990 Cum.Supp.), psychologists and other mental health professionals are required to *report* suspected child abuse to social service authorities. Consequently, they argue, a determination that the psychologist-patient privilege was retained is irreconcilable with the reporting requirements of the statute.

■ In construing a statute, the whole act must be considered so as to give consistent, harmonious, and sensible effect to all of its parts. *Massey v. District Court,* 180 Colo. 359, 506 P.2d 128 (1973). In addition, the court must "keep in mind the object sought to be obtained by the statute" and must presume that the General Assembly intended a reasonable result which favors the public interest over any private interest. *Allen v. Charnes,* 674 P.2d 378 (Colo.1984).

■ Although statutory language should be given effect according to its plain and obvious meaning, *People v. District Court,*

713 P.2d 918 (Colo.1986), when a literal interpretation creates an absurd result, the intention of the framers will prevail over this interpretation. *People v. Silvola,* 190 Colo. 363, 547 P.2d 1283 (1976).

We agree that, here, the purposes underlying the Child Protection Act to facilitate the detection, reporting, and prosecution of child abuse cases appear to be inconsistent with the retention of any evidentiary privilege. Thus, we must look to the legislative history to ascertain whether, at the time of defendant's trial, the General Assembly intended to retain the psychologist-patient privilege in child abuse cases.

When the Child Protection Act was originally submitted to the General Assembly for discussion in 1975, the statutory section regarding testimonial privileges provided that all such privileges, except that between attorney-client, were abrogated in child abuse cases. H.B. 1482, 50th General Assembly 1975 (as proposed). However, this section was amended before the bill was adopted to provide that only the physician-patient and husband-wife privileges would be abrogated. *See* Colo. Sess. Laws 1975, ch. 177 at 652. At that time, the General Assembly also considered abrogating this privilege for psychologists, but declined to do so. Hearings on H.B. 1482 Before the Subcommittee of the House Judiciary Committee, 54th General Assembly, First Session (March 24, 1983). In 1983, this statute was again amended to abrogate the nurse-patient privilege. Colo. Sess. Laws 1983, ch. 173, § 19–10–112 at 637.

Finally, in 1989, the statute was again amended to specify that client communications to mental health workers regarding child abuse are no longer privileged in child abuse proceedings. § 19–3–311, C.R.S. (1990 Cum.Supp.). Discussion during the committee hearings on this amendment confirms that the inclusion of mental health professionals in this section was specifically intended to abrogate a testimonial privilege that previously existed for these individuals. *See* Hearing on H.B. 1286 Before the House Health, Education, Welfare & Institutions Committee, 57th General As-

sembly, First Regular Session (Feb. 8, 1989); Hearing on H.B. 1286 Before the Senate Health, Environment, Welfare & Institutions Committee, 57th General Assembly, First Regular Session (March 2, 1989).

In sum, the legislative history reveals that the General Assembly considered abrogating testimonial privileges other than those enumerated in the statute on several occasions, but declined to do so until 1989. Thus, we conclude that the psychologist-patient privilege was not abrogated at the time of defendant's hearing in November 1988.

Therefore, because statutes should be construed so as not to conflict with other statutes, § 2–4–205, C.R.S. (1980 Repl.Vol. 1B), we conclude that the reporting and privileged communications statutes can be reconciled by construing the version of § 19–10–104 applied here to require psychologists or those under their supervision to *report* suspected abuse to appropriate authorities, but, pursuant to § 13–90–107(1)(g), to prohibit them from testifying against their client without consent.

■ Accordingly, we agree with defendant that his communications to the social worker were privileged and should not have been admitted. However, we further conclude that any error in allowing these statements into evidence was harmless. *See B.B. v. People,* 785 P.2d 132 (Colo. 1990).

The social worker did not testify at trial. The only testimony regarding defendant's statement came from a member of the Child Protection Team responsible for investigating the child abuse. This testimony consisted of two sentences made by defendant to the social worker regarding the abuse. The record also shows that this testimony was admitted as background information for the further investigation of defendant. Moreover, there was overwhelming evidence against defendant which included the testimony of the victim, and two separate confessions to police officers. Under these circumstances, any error was harmless. *See B.B. v. People, supra.*

**B.**

■ Finally, defendant also contends that because his statements were privileged, it was also error to allow any information obtained pursuant to these statements to be used to investigate or prosecute defendant. We disagree.

Essentially, defendant admits that the reporting of child abuse is required, but argues that the information obtained from the reports could not be used in any way against the perpetrator of the crime. Contrary to defendant's suggestion, however, one of the purposes of the Child Protection Act is to aid in the investigation and prosecution of child abusers. *See* §§ 19–10–105, 19–10–109, 19–10–111, and 19–10–113, C.R.S. (1986 Repl.Vol. 8B). This purpose could not be fulfilled if, as defendant suggests, the privilege here prevented any disclosure of the fact that a report was made. *See People v. Battaglia,* 156 Cal.App.3d 1058, 203 Cal.Rptr. 370 (1984) (Child Abuse Reporting Act is not merely to remove victim from harm, but also to aid in prosecution. Thus, victim's testimony obtained as a result of report was admissible, even if defendant's statements to the psychotherapist were privileged.).

Therefore, we decline to extend the psychologist-patient testimonial privilege which was applicable here so as to prevent the use of the child abuse reports in investigating or prosecuting the perpetrators.

**II.**

■ Defendant next contends that his statements to the social worker and all evidence derived therefrom must be suppressed because they were given involuntarily. We disagree.

■ Voluntariness of a statement is not an issue if the statement is not made to law enforcement authorities or their agents. *People v. Chastain,* 733 P.2d 1206 (Colo.1987). The requirement that certain mental health professionals report suspected incidents of child abuse or neglect does not, by itself, render such professionals

agents of law enforcement officials. *See People v. Battaglia, supra.*

Moreover, defendant's statements to the social worker were made pursuant to his voluntary admission to an alcohol treatment facility. While complete honesty was required by the facility, the voluntariness of a waiver of the Fifth Amendment privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the term. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

Defendant went to the facility on his own volition and was free to break off the discussion with the social worker at any time and leave. *Cf. Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (post-arrest, custodial interview by psychologist requires waiver before statements can be used in penalty phase); *People v. Gennings,* 808 P.2d 839 (Colo.1991). As defendant was not in custody, no advisement of his rights was required, nor do the circumstances indicate that he was coerced to make incriminating statements.

### III.

Defendant next contends that his statements to the first detective should not have been admitted into evidence because they were custodial statements made without proper advisement. We disagree.

The People have the burden of establishing that a confession was voluntary by a preponderance of the evidence. *People v. McIntyre,* 789 P.2d 1108 (Colo. 1990). A statement is voluntary if it is not obtained by threats or violence, nor induced by direct or implied promises. *People v. McIntyre, supra.*

The voluntariness of a statement is determined by considering the totality of circumstances under which it is given. *People v. Gennings, supra; People v. Raffaelli,* 647 P.2d 230 (Colo.1982). And, a court's findings of fact on the issue of voluntariness are entitled to deference, and will not be overturned if supported by competent evidence in the record. *People v. McIntyre, supra.*

Here, the trial court found that defendant was advised that he was not under arrest nor would he be at the conclusion of the interview, could leave at any time, and could refuse to answer any questions. The testimony of the detective supports this conclusion. Nothing in the record supports defendant's assertion on appeal that he was coerced into making the confession by the detective's statement that he would not be arrested at the conclusion of the interview. Defendant's awareness of his right to refuse to answer any question was demonstrated by the fact he exercised that right.

### IV.

Defendant finally contends that his custodial statement to the second detective was inadmissible because the trial court did not explicitly find that he waived his right to remain silent. We disagree.

The People must prove a valid *Miranda* waiver by a preponderance of the evidence. *People v. Hopkins,* 774 P.2d 849 (Colo.1989). Here, the transcript of defendant's statement indicates that he was properly advised and that he stated both his understanding of his rights and his willingness to waive those rights. Also, the trial court's finding that defendant voluntarily participated in the interview is amply supported in the record.

Provided the record demonstrates both the validity of the waiver and the voluntariness of the statement, the trial court's rulings on these issues need not be separate and distinct from each other. *People v. Spring,* 713 P.2d 865 (Colo.1985).

The judgment is affirmed.

METZGER and ROTHENBERG, JJ., concur.